**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

EARL T. BARNETT,

Plaintiff,

v.                                    CIVIL ACTION NO. 1:11cv203

UNITED STATES ATTORNEY GENERAL,
FEDERAL BUREAU OF PRISONS,

Defendants.

## ORDER/ REPORT AND RECOMMENDATION/OPINION

Before the Court is Defendants' Motion to Dismiss, or, in the Alternative, for Summary

Judgement [sic][Docket Entry 14]. This Motion is before the undersigned upon referral by United

States District Judge Irene M. Keeley. The motion is fully briefed and ripe for review.

### I. Procedural History

On January 16, 2011, Plaintiff Earl T. Barnett, appearing *pro se*, filed his Complaint (Entitled

Justification for Relief) [Docket Entry 1], which states in full:

> Now come the plaintiff, Earl T. Barnett, to ask the honorable court permission to file
> civil actions against the defendant.
>
> The honorable U.S. Attorney General, Eric H. Holder, Jr., Department of Justice,
> Federal Bureau of Prisons, who is the agency.
>
> In the matter of a discrimination and harassment complaint. (File numbers [P-2009-
> 0775 and P-2010-0737].) These matters were denied at the EEOC. I was given a
> complainant's right to file a civil action –AP0610. I am filing this civil action because
> the EEOC and the EEO stated that my complainant [sic] was the same case that was
> previously ruled on and dismissed. Honorable court, the case that was dismissed by
> the court was the disability complaint of 2004. This went to the Northern District of
> West Virginia in 2005, and the honorable judge stated that I did not exhaust my
> administrative remedies. Honorable court, the Discrimination Complaint of 1978 has
> never been in the courts, only in the EEO in August of 1978. The investigation of this

matter was never resolved. This is a declaration from Margaret Renaux, EEO Specialist, in the Bureau, that comes from the database. This database shows that there was a complaint filed in August of 1978.

On October 22, 2009, the EEO allowed me to submit my complaint again. In addition the EEO allowed me to file a harassment complaint in 2010. Neither one of these matters has been ruled on by the District Court, but the EEO and the Office of Federal Operations dismissed these complaints. Honorable court, I do believe that the previous complaints were dismissed in error. The complaint for 1978 has never been in the District Courts and the Harassment Complaint has never been submitted prior to 2010.

Attached to his Complaint was an additional letter to this Court, entitled "Harassment Complaint," stating, in pertinent part:

I do not believe this is the same complaint that was filed before and dismissed by the Courts. I have only filed this harassment complaint after I realized I had been put in a harassment situation by my food manager and coworkers. The job situation created an offensive, hostile, and intimidating environment recognizable to any reasonable person . . . . this all occurred in 1978 and I suffered the effects for years on after.

Plaintiff also attached copies of a Denial Letter from the United States Equal Employment Opportunity Commission ("EEOC") (P-2009-0775)(the racial discrimination claim); a Denial Letter from the United States Equal Employment Opportunity Commission (P-2010-0737)(the harassment claim) ; a Brief in Support of the Appeal (to the EEOC); Plaintiff's "Overview of Case to anyone who is not familiar with the case;" and the Declaration of Marcia Renaux dated November 21, 2005.

On March 28, 2012, Defendants filed "Defendant's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment" and Memorandum in Support [Docket Entries 14 and 15, respectively]. Defendants attached exhibits to their Motion, consisting of the files for the complaint of racial discrimination and the separate complaint of harassment; a copy of this Court's Order dismissing Plaintiff's 2005 Complaint (Barnett v. Gonzales, 1:05cv58); the Declaration of William H.S. Pratt; and the Declaration of Jamie Johnson.

On April 17, 2012, the Court sent a "<u>Roseboro</u> Notice"[1] to Plaintiff, advising him that Defendant had filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, and further advising him of his right to file responsive material. The Notice alerted Plaintiff to the fact that his failure to so respond might result in his case being dismissed or summary judgment being granted in favor of Defendants. The Court gave Plaintiff thirty (30) days to file his opposition, if any, to Defendant's Motion.

On May 8, 2012, Plaintiff filed his "Answer to Roseboro Notice" and "Response to Motion to Dismiss/Motion for Summary Judgement" [Docket Entries 21 and 22, respectively]. Plaintiff attached exhibits to his Response.

On May 22, 2012, Defendants filed their Reply [Docket Entry 24]. On June 4, 2012, Plaintiff filed a "Reply to the Defendant's Response to the Motion/Motion for Summary Judgement" [sic] [Docket Entry 25]. He attached a copy of the EEO Counselor's Report from July 26, 2004 (the disability case already decided by this Court). On June 11, 2012, Plaintiff filed a "Response to Defendant's Reply" [Docket Entry 26]. On June 15, 2012, Defendants filed a Motion to Strike Plaintiff's Response and Reply [Docket Entry 27]. On June 20, 2012, Plaintiff filed a "Motion to Get Permission to File Documents to the Court" [Docket Entry 28].

## II. MOTION TO STRIKE AND MOTION TO GET PERMISSION TO FILE DOCUMENTS

The undersigned first decides Defendants' Motion to Strike Plaintiff's Response and Reply [Docket Entry 27] and Plaintiff's "Motion to Get Permission to File Documents to the Court" [Docket Entry 28]. On June 4, 2012, Plaintiff filed a "Reply to the Defendant's Response to the Motion/Motion for Summary Judgement" [sic] [Docket Entry 25]. Defendants had not filed a

---

[1]<u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975).

"Response," but a "Reply." Plaintiff's "Reply" is therefore a "surreply." He attached a copy of the EEO Counselor's Report from July 26, 2004 (the Disability case already decided by this Court). On June 11, 2012, Plaintiff filed a "Response to Defendant's Reply" [Docket Entry 26]. Defendants filed a Motion to Strike Plaintiff's Response and Reply [Docket Entry 27]. Plaintiff filed a "Motion to Get Permission to File Documents to the Court" [Docket Entry 28].

Defendants are correct that Local Rule of Civil Procedure 7.02(b)(3) provides that parties shall not file surreply memoranda except by leave of court. Plaintiff did request leave of court to file the documents, albeit belatedly. The undersigned does find Plaintiff's surreply and attachment of the 2004 EEO Counselor's report is in response to certain contentions Defendants asserted in their Reply, and therefore **DENIES** Defendants' Motion to Strike and **GRANTS** Plaintiff's motion to file **only as to Docket Entry 25.** Docket Entry 26 consists solely of further argument, and is not in response to anything new in Defendants' Reply, and the undersigned therefore **GRANTS** Defendants' Motion to Strike and **DENIES** Plaintiff' Motion to File as to that document.

Docket Entries 27 and 28 are each **GRANTED IN PART AND DENIED IN PART**.

It is so **ORDERED.**

**III. Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment**

**A. BACKGROUND**

In summarizing the facts, the Court resolves all disputed factual issues in the plaintiffs' favor. Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994).[2] Plaintiff, who is African-American, was employed by the Federal Bureau of Prisons ("BOP") during the time period of 1976 until some time in August

---

[2]The entirety of facts regarding Plaintiff's employment with the BOP from 1976-1978 are recited in the undersigned's Report and Recommendation in Plaintiff's prior case, 1:05cv58, and are not stated here.

1978. On August 9, 1978, Plaintiff's supervisors informed him that he had until the end of the week to resign or they would terminate him that Friday. He was further informed that if he were fired from a job with the Department of Justice, he would never be able to find another job. Plaintiff resigned. Plaintiff alleged his "resignation" was in reality a constructive discharge based on discrimination due to race. Plaintiff approached the EEO counselor to file a complaint of racial discrimination. The EEO counselor informed him that he did not have time to file the paperwork as he was going on vacation for two weeks.

The following Monday Plaintiff filed a Complaint with the EEOC based upon wrongful dismissal/discrimination due to race in September 1978. An EEO Counselor took Plaintiff's and others' statements in or about November 1978. In or about February 1979, Plaintiff received a report of the investigation and "picked out parts that [he] felt were mistated [sic] by [his] co-workers and supervisors and or having been coached employees as the stories were too identical" and mailed his objections and questions to the Philadelphia branch of the EEOC, as instructed. He was then informed by the counselor in Philadelphia that she was going on maternity leave and would take the case home with her. He would hear from her when she made a decision upon her return to work. As of the date of filing the Complaint in this case, however, he had never heard back from the EEOC regarding the claim. BOP employee Marcia Renaux submitted a Declaration dated November 21, 2005, stating that the Bureau had no additional information with regard to the complaint, and could not locate any original correspondence files with regard to the 1978 complaint.[3]

Plaintiff contacted the EEOC in 1990, asking for his claim to be reopened.

Plaintiff was diagnosed with PTSD by the VA in 1999, and was awarded 100% service-

---

[3]Plaintiff attached Ms. Renaux's Declaration to his Complaint.

connected disability for PTSD.  He contacted the EEO in January 1999, stating that he wanted to file a claim for PTSD that he suffered due to his coerced resignation in 1978.  Plaintiff "did[] not hear from them. . . so [he] let it go."

In 2004, Plaintiff was evaluated by psychologist Martin Boone, Ph. D. , who diagnosed PTSD, onset delay, caused by his Vietnam War experience, but noting Plaintiff's report of increased symptoms following his "forcible resignation" in 1978.

Plaintiff filed a "Complaint of Discrimination" with the U.S. Department of Justice on April 13, 2004, explaining:

> I believe I have disability under (PTSD) and alcohol abuse while I was working on my EEO claim for discrimination in 1978 because over a few months I have problems w/ my mental condition from the Vietnam War.  So that is why I am putting in for disability under (delay onset) for (PTSD) + alcohol abuse b/c I recently found out on 02/20/04. [sic]

Plaintiff's  Complaint was dismissed for untimely contact with an EEO Counselor, because he had not contacted an EEO Counselor until approximately 25 years after he resigned from FCI Morgantown.

Plaintiff obtained counsel, and, on November 5, 2004, appealed the EEOC decision.  In the Appeal, Plaintiff's counsel alleged the DOJ discriminated against Plaintiff on the basis of a mental disability when it constructively discharged him in 1978.  Counsel argued that Plaintiff did not file his complaint within the 45-day time limit, because "he did not know of his condition until shortly before he filed the Complaint."  He then argued that Plaintiff's cause of action should begin when he knew or should have known of the cause of action.

On January 13, 2005, the EEOC, Office of Federal Operations, entered its Decision finding that Plaintiff's complaint was properly dismissed pursuant to 20 CFR § 1614.107(a)(2), for untimely

EEO Counselor contact.

Plaintiff filed a Complaint in this Court in 2005 (See 1:05cv58), for disability based on the coerced resignation in 1978. In that case, Plaintiff stated a number of times that the Complaint was not based upon the 1978 complaint and he "[wa]s not pursuing a claim due to wrongful termination due to forcible resignation . . . ." Defendant in that case, United States Attorney General Alberto Gonzales, filed a Motion to Dismiss or, Alternatively, for Summary Judgment. United States District Judge Irene M. Keeley noted that any discrimination claim would have commenced on the date of Plaintiff's alleged constructive termination on August 9, 1978, and that, therefore, "regardless of the type of discrimination, any claim arising from the alleged forced termination should have been brought to an EEO counselor within 30 days of that date." The Court dismissed Plaintiff's complaint with prejudice.

Plaintiff filed a Motion for Reconsideration of the Court's Order dismissing his complaint. He brought to the Court's attention the Declaration of Marcia Renaux, stating his complaint with the Bureau was accepted on September 25, 1978, and the investigator's report on the EEO discrimination complaint was submitted on February 6, 1979. He stated that the Bureau never responded with any acknowledgment of the 1978 case, but "due to the revelation that the PTSD-DO disability was related to the discrimination complaint of 1978, the 2004 complaint should be consolidated or merged into the 1978 complaint." Plaintiff further moved the court for permission to amend the complaint to consolidate the 2004 complaint and 1978 complaint into one complaint "as the Bureau of Prisons' discriminatory cause of action of 'Constructive Termination' resulted in a disability of PTSD-DO." He expressly argued that the two complaints were related due to the forcible resignation by the BOP in 1978.

Defendant filed a Response to the Motion for Reconsideration. Plaintiff filed a Reply on November 6, 2006 (See 1:05cv58 DE 49). Plaintiff argued that the defendant had failed to show that the 1978 EEOC complaint was denied or referred. He further argued that the court failed to accept his continued argument that he timely filed his complaint in 1978 and then "attempted to renew my complaints in a new avenue in 2004 when I learned of the consequences of the 1978 Summary of Events having caused my disability of PTSD-DO." Further, "Judge Keeley and staff failed to recognize the importance of [Marcia Renaux's Declaration] as having been correct that [he] did indeed file a complaint in 1978 with the EEOC and subsequently was issued a new case number in 2004 by the EEOC upon [his] notification to them of the disability discovery which was filed in a timely manner again." Plaintiff requested the Court overturn its order "and or protect [his] rights to re-file a suit in District Court more properly arguing [his] case . . . ."

On November 9, 2006, the District Court denied Plaintiff's Motion for Reconsideration, noting that he argued that "the Court failed to recognize the importance of the evidence establishing that he filed a complaint with the EEOC in 1978" and finding that he "essentially argues that the Court erred in its analysis and asserts an argument of clear error of law." [DE 50, 1:05cv58]. The Court held: "A motion to reconsider cannot be used to have the Court 'rethink what the Court has already thought through – rightly or wrongly." (Citing United States v. Dickerson, 971 F.Supp. at 1024.)

Plaintiff appealed to the United States Court of Appeals for the Fourth Circuit, which affirmed the District Court decision on June 15, 2007. (1:05cv58 DE 55). The Fourth Circuit reviewed the order dismissing his civil action with prejudice and also the order denying his motion for reconsideration, and found no reversible error. The United States Supreme Court denied cert. Barnett

v. Mukasey, 128 S.Ct. 957 (2008).

According to the documents attached to Defendants' Response in the present case, Plaintiff contacted an EEO Counselor regarding his two new complaints (both concerning the 1978 constructive discharge claim) in August 2009 (Gov't. Exs. 1 and 2). He was given a receipt of notice of final interview with EEO counselor for the racial discrimination claim in October 2009, and for the harassment claim in September 2010. Both claims were ultimately denied by the EEOC, but for different reasons. The September 2010 (harassment) claim was ultimately denied on the basis of untimely EEO counselor contact (Ex. 1). The October 2009 (racial discrimination) claim was denied "for raising the same claim pending or that has been decided by the Agency or Commission." (Ex. 2).

Plaintiff timely filed his Complaint with this Court.

## B. STANDARDS OF LAW

### 1. Motion to Dismiss

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662,129 S. Ct. 1937 (2009); Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007). "The plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully. It requires the plaintiff to articulate facts, when adopted as true, that show that the plaintiff has stated a claim entitling him to relief, i.e., the plausibility of entitlement to relief." Francis v. Giacomelli, 588 F.3d 186, 193 (internal quotations omitted).

Although the Court must accept factual allegations in a complaint as true, this "tenet . . . is inapplicable to legal conclusions." Iqbal at 1950. Thus, a complaint may be dismissed when the facts

alleged clearly demonstrate that the plaintiff has not stated a claim and is not entitled to relief. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 344-45 (3rd ed. 2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1949 (citation omitted).

## 2. Summary Judgment

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986). In considering a motion for summary judgment, the court is required to draw reasonable inferences from the facts in a light most favorable to the nonmoving party. Id. at 255.

The moving party has the burden of initially showing the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

# C. ANALYSIS

The United States Supreme Court holds that a complaint, especially a *pro se* complaint, should not be dismissed summarily unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(quoting from Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Based on United States Supreme Court rulings, the Fourth Circuit, in Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978), quoted with approval Canty v. City of Richmond, 383 F. Supp. 1396 (E.D. Va. 1974), affirmed 526 F.2d 587 (4th Cir. 1975), cert. denied 423 U.S. 1062, 96 S. Ct. 802, 46 L.Ed.2d 654 (1976), as follows:

> (T)he Fourth Circuit takes the position that its district courts must be especially solicitous of civil rights plaintiffs.
>
> This solicitude for a civil rights plaintiff with counsel must be heightened when a civil rights plaintiff appears pro se. In the great run of pro se cases, the issues are faintly articulated and often only dimly perceived. There is, therefore, a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done. So, although the Court of Appeals cannot mean that it expects the district courts to assume the role of advocate for the pro se plaintiff, radiations from Burris strongly suggest that the district court must examine the pro se complaint to see whether the facts alleged, or the set of facts which the plaintiff might be able to prove, could very well provide a basis for recovery under any of the civil rights acts or heads of jurisdiction in the federal arsenal for redress of constitutional deprivations. Accordingly, the Court in considering the defendant's motion to dismiss will not permit technical pleading requirements to defeat the vindication of any constitutional rights which the plaintiff alleges, however inartfully, to have been infringed.

Id. at 1151.

Defendants base their motion for summary judgment on res judicata and the doctrine of laches. It is clear from the pleadings and exhibits, that the only discriminatory act alleged, no matter what type of discrimination, took place in 1978, when Plaintiff resigned, allegedly due to coercion.

Plaintiff at that time alleged the forced resignation was discriminatory, based on race.

## 1. Harassment/Hostile Work Environment Claim

Part of Plaintiff's Complaint regards harassment on the job by co-workers and food managers "from 1976 July to 1978 August." (Complaint– Docket Entry 1 At Exhibit 4). Plaintiff specifically states the harassment complaint "is not the same complaint that I have previously submitted for disability in 2004 that went to the West Virginia District Court. Additionally, this is not the same complaint that I made in August 1978 for Discrimination, that was never resolved by the EEOC." He specifically states the harassment claim is a "new complaint."

To bring a civil action under Title VII, a plaintiff must exhaust his administrative remedies by bringing a charge with the EEOC. Smith v. First Union Nat'l, Bank, 202 F.3d 234 (4th Cir. 2000). The Fourth Circuit has instructed that "[a] plaintiff's EEOC charge defines the scope of [his] subsequent right to institute a civil suit." Id. Furthermore, "[i]f a plaintiff's claims in [his] judicial complaint are reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in [his] subsequent civil suit." Id.

At the time the alleged discriminatory act occurred, in 1978, the EEOC regulations governing federal sector discrimination complaint procedures were found at 29 C.F.R. Part 1613. EEOC regulation 29 C.F.R. § 1613.214(a)(1)(I) required that a federal employee filing a complaint of discrimination with an agency was required to first bring the complaint to the attention of an EEO counselor at that agency within 30 days of the alleged discriminatory event.[4]  Exhaustion of

---

[4]The regulations as amended effective October 1, 1992, extended the time to contact an EEO counselor to 45 days.  29 C.F.R. § 1614.105(a)(1).

administrative remedies within the EEOC is not a subject matter jurisdiction prerequisite to suit in federal court. It is, instead, a prerequisite akin to a statute of limitations. See Zografov v. V.A. Medical Center, 779 F.2d 967 (4th Cir. 1985). Like a statute of limitations it is therefore subject to equitable tolling. Id. Under certain circumstances, waiver of the time limit is mandatory:

> The agency of the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section [I] when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, [ii] that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, [iii] that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or [iv] for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. section 1614.105(a)(2).

Plaintiff here does not allege, nor does the undersigned find, that he was not notified of the time limits or was not otherwise aware of them. The fact that Plaintiff did timely file a complaint in 1978 based on racial discrimination evidences that he was well aware of the procedures to follow and time limits. He clearly knew the personnel action occurred, and admittedly knew of the alleged "harassment" at the time. He does not allege and the undersigned finds no circumstances prevented Plaintiff from contacting the counselor about the harassment claims at the same time as the race discrimination claim. Plaintiff failed to contact an EEO counselor regarding his harassment claim within the 30-day limit. The undersigned therefore **RECOMMENDS** the Court **GRANT** Defendants' Motion to Dismiss as to the "harassment/hostile work environment" claim.

### 2. Res Judicata

Defendants argue all of Plaintiff's current claims are precluded by the doctrine of res judicata. Under the doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated

Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 101 S.Ct. 2424 (1981); Meekins v. United Transp. Union, 946 F.2d 1054(4th Cir. 1991)(emphasis added). "For res judicata to prevent a party from raising a claim, three elements must be present: '(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action.'" Ohio Valley Environmental Coalition v. Aracoma Coal Co., 556 F.3d 177 (4th Cir. 2009)(citing Aliff v. Joy Mfg. Co., 914 F.2d 39 (4th Cir. 1990)). Further, "[i]n finding that the second suit involves the same cause of action, the court need not find that the plaintiff in the second suit is proceeding on the same legal theory he or his privies advanced in the first suit." Aliff at 43. "As long as the second suit 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment,' the first suit will have preclusive effect." Id. The doctrine therefore also bars litigation of all claims or defenses that were available to the parties in the previous litigation, regardless of whether they were asserted or determined in the prior proceeding. Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205 (1979); Meekins v. United Transp. Union, 946 F.2d 1054 (4th Cir. 1991). A plaintiff may not bring piece-meal litigation by naming different defendants and alleging new causes of action when all of his claims arise from the same operative facts. See Keith v. Aldridge, 900 F.2d 736 (4th Cir.), cert. denied, 498 U.S. 900, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990). Although the names of the defendants are different, they were each Attorney General of the United States at the relevant time. In the prior (2004) case, Plaintiff named then- Attorney General Alberto Gonzales, while in the present case he names current Attorney General Eric Holder, Jr. "There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government." Sunshine Anthracite Coal Co v. Adkins, 310 U.S. 381

(1941). The undersigned finds the second element for res judicata to apply has been met.

Plaintiff argues that the 1978 racial discrimination case is not the same case that was litigated in this court. The furthest that case had gone was to the EEO in August 1978, which apparently investigated and sent a report of investigation early in 1979. Plaintiff argues the present (racial discrimination) case is therefore entirely separate from the 2004 Disability case, and that the present case "has never been ruled on or litigated on by the District Courts of West Virginia." Defendants argue that Plaintiff's present claims that he was forced to resign in 1978 due to racial discrimination and harassment are identical to his prior 2004 disability claim that he was forced to resign in 1978.

Whether two suits arise out of the same cause of action does not turn on whether the claims asserted are identical. The determination turns on whether the suits and the claims "arise out of the same transaction or series of transactions or the same core of operative facts." Pueschel v. U.S., 369 F.3d 345 (4th Cir. 2004) (quoting In re Varat Enters., Inc., 81 F.3d 1310)(4th Cir. 1996)). As the Fourth Circuit noted in Pueschel, a focus on the claims asserted in each suit would allow the parties to frustrate the goals of res judicata through artful pleading and claim splitting given that "[a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law." Pueschel, supra at 355.

Defendants argue it is "evident" that the same transaction and core of operative facts are involved in Plaintiff's prior and present civil actions. The undersigned agrees. The prior case and the present claims all involve the exact same transaction, Plaintiff's alleged "coerced resignation" from his position as a cook foreman for the BOP in August 1978. The third element for res judicata has therefore also been met.

The sole issue remaining as to the res judicata defense is whether the district court's dismissal

with prejudice of Plaintiff's 2004 claim was a judgment on the merits. Defendants argue it is, citing Steward v. Garrett, 1990 WL 151488 (E.D. Va. 1990), which in turn cites Mervin v. Federal Trade Comm'n, 591 F.2d 821 (D.C. Cir. 1978). In Steward, the plaintiff was terminated by the Navy. He filed several discrimination and retaliation complaints with the Merit Systems Protection Board ("MSPB"). After some of his complaints were rejected by the Board, but while others were still pending, Steward filed a complaint in federal court, alleging he was terminated on the basis of race and reprisal (Steward I). The suit was dismissed for failure to state a claim upon which relief could be granted because Steward "failed to sue the proper defendant in a timely manner." Steward subsequently filed another complaint based on the allegations that had still been pending before the Board. The court found the issue was whether the doctrine of res judicata barred judicial review of the charges that were still pending when Steward filed his civil action. The court states: "Judge Kellam's dismissal constituted a dismissal on the merits having full res judicata effect." (Citing Mervin, supra).

Mervin, in turn, was also an employment case. Shortly after his termination, Mervin filed a civil action in federal court seeking reinstatement. The action was dismissed without prejudice for failure to exhaust administrative remedies. Meanwhile, Mervin attempted to pursue administrative remedies; however, his petitions were by then denied as untimely. He sued in federal court asking for a mandatory injunction. The case was dismissed for failure to state a claim. In his third case, the court found Mervin was pursuing the same cause of action, involving the same dismissal, as in the earlier two cases. The court found that principles of res judicata prevented relitigation not only on the grounds or theories actually advanced, but also on those which could have been advanced in the prior litigation. The court also explained:

We are aware that the prior court decisions did not address the merits of Mervin's contentions. However, the records of the prior cases reveal that Mervin, an attorney, consciously chose to begin by seeking judicial rather than administrative remedies, and did not first seek administrative relief until several months after he was put on notice that that was the proper course of action . . . . His suit against the Civil Service Commission was dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, since he sought relief which was beyond the power of the CSC to give. This is an adjudication on the merits having full res judicata effect.

The court also quoted 2A Moore's Federal Practice P. 12.09(3) at 2313 (2d ed. 1975):

Increasingly. . . by statute, rule or court decision, judgments not passing directly on the substance of the claim have come to operate as a bar . . . .

The rule that a defendant's judgment acts as a bar to a second action on the same claim is based largely on the ground that fairness to the defendant, and sound judicial administration, require that at some point litigation over the particular controversy come to an end. These considerations may impose such a requirement even though the substantive issues have not bee tried, especially if the plaintiff has failed to avail himself of opportunities to pursue his remedies in the first proceeding.

Neither <u>Mervin</u> nor <u>Steward</u> are precedent in this District. The undersigned has also reviewed a case from this District, <u>Struna v. Shepherdstown Planning Comm'n</u>, (3:09cv77) 2011 WL 862167 (N.D.W. Va. 2011)(unreported), which addresses the issue of whether a state court dismissal with prejudice barred further litigation. In <u>Struna</u>, the parties argued "at length" over whether the action was simply an attempt to relitigate the first action. Chief District Judge John P. Bailey found the subsequent claim was not barred by res judicata "because there had been no final judgment *on the merits*. The [prior] claim was dismissed for failure to exhaust administrative remedies alone." (Emphasis in original). Judge Bailey continued:

Several commentators have spoken to the above issue, and appear to conclude that dismissal for failure to exhaust administrative remedies is not a decision on the merits. For example, in *Wright, Miller & Cooper, Federal Practice and Procedure*, volume 18, section 4436, the authors state:

There is little mystery about the *res judicata* effects of a judgment that

-16-

dismisses an action for lack of subject or personal jurisdiction or for improper venue. Civil Rule 41(b) provides that a dismissal for lack of jurisdiction or improper venue dues not operate as an adjudication upon the merits. This provision means only that the dismissal permits a second action on the same claim that correct the deficiency found in the first action . . . . Similar effects attend dismissals that rest on matters closely related to jurisdiction, such as justiciability *or a requirement of prior resort to an administrative agency*.

(Emphasis in original).

*See* <u>*also*</u> *Moore;'s Federal Practice*, 3d Ed., Vol. 18, section 131.30(b):

Ordinarily, a judgment for the plaintiff is necessarily a judgment on the merits, since a judgment granting the requested relief necessarily established the claim. However, the defendant may sometimes prevail because the court determines that it has no subject matter jurisdiction, that personal jurisdiction of defendants or of indispensable parties is lacking, that venue is improper, or that plaintiff has failed to comply with some prerequisite to filing suit, such as exhaustion of administrative remedies. In such cases, the resulting judgment of dismissal is not a determination of the claim, but rather a refusal to hear it, and the plaintiff may thereafter pursue it in an appropriate forum or when the preconditions have been met.

The same result is found in the *Restatement of the Law Second, Judgments 2d*, section 20(2) which provides:

A valid and final personal judgment for the defendant, which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied, unless a second action is precluded by operation of the substantive law.

The Supreme Court, in a leading case, reached this same conclusion. In construing Federal Rules of Civil Procedure, Rule 41(b), which pertains to involuntary dismissals, the Court has interpreted the rule's "lack of jurisdiction" exception broadly, giving the concept of "jurisdiction" meaning beyond its traditional personal and subject matter usages: "[T]he exception . . . encompass[es] those dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim." *Costello v. United States*, 365 U.S. 265 (961).

Based upon the above well-reasoned commentary, this Court **DENIES** the defendants' Amended Motion to Dismiss for Res Judicata.

Struna, supra,. at *4-*5.

Interestingly, in Struna, Chief Judge Bailey first explained his decision to exercise jurisdiction over a matter in which the plaintiff had not exhausted administrative remedies. After discussing the policy concerns regarding ripeness, he stated:

> This Court has carefully considered the above policy concerns, however, it believes these purposes will not be undermined by this Court's involvement in this particular case. In this case, it is the plaintiff whose permit was twice denied who once again has prematurely availed himself of the courts. Since the plaintiff insists on pursuing relief in this manner, this Court is obliged to accommodate his request, insofar as he alleged violation of the Constitution of the United States. Based on the history of this action, this Court has little reason to doubt that, otherwise, the plaintiff's obstinance will again land him in this Court.

Id. at *3.

Upon consideration of all of the above, the undersigned finds the District Court's dismissal with prejudice of Plaintiff's 2004 case was not a final judgment on the merits. The undersigned therefore finds res judicata does not bar Plaintiff's current action.

### 3. Laches

Defendants next argue Plaintiff's complaint should be barred under the doctrine of laches. As the United States Supreme Court has stated:

> In addition to other equitable defenses . . . an employer may raise a laches defense, which bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant. This defense "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense."

National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002). In White v. Daniel, a Voting Rights case, the Fourth Circuit found the application of the doctrine of laches dispositive.

-18-

909 F.2d 99 (4th Cir. 1990). The Court further held: "[T]he equitable balancing of a plaintiff's delay with prejudice to a defendant is primarily left to the sound discretion of the trial court, and we may not reverse 'unless it is so clearly wrong as to amount to an abuse of discretion.'" Id. at 102 (internal citations omitted).

It is undisputable that the one alleged discriminatory act in this case took place in August 1978, over 34 years ago. In a District of Maryland employment discrimination case, the court held:

> Obviously a period of over 20 years following an act of discrimination is an unreasonable period of delay. The question of prejudice is also resolved reasonably in favor of the defendants. Not only are many witnesses virtually impossible to locate after 20 years, but their memories are obviously affected by the passage of time, especially in a case such as this, where there was not a starting episode that engraved itself on the minds of witnesses, as would be the case had they seen a grisly murder 20 years ago. Other reported cases have recognized that, in such circumstances, the Court may hold as a matter of law that the action is barred by laches. *See, e.g., Jeffries v. Chicago Transit Auth.*, 770 F.2d 676 (7th Cir. 1985), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581(1986). Certainly, the plaintiff has shown absolutely no excuse for his 20-year delay in pursuing this matter. Furthermore, there is no indication that the EEOC was actively pursuing the claim on plaintiff's behalf for the past 20 years. *See Jeffries*, 770 F.2d at 678-81. Under these circumstances, the Court may properly hold as a matter of law that Count I of the amended complaint is irretrievably, time-barred. *Id.*

Henderson v. Anne Arundel County Bd. Of Ed., 54 F.Supp.2d 481 (D. Md. 1998). Henderson's holding relied, in turn on Jeffries v. Chicago Transit Authority, 770 F.2d 676 (7th Cir. 1985), another employment discrimination case. Significantly, in Jeffries, after taking no action for eight years, the EEOC informed the defendant that reasonable cause existed for the discrimination claim. The defendant responded that the EEOC had lost jurisdiction because of the 8-year lapse between the charge and the reasonable cause determination. The EEOC actually issued Jeffries a right-to-sue letter, authorizing him to bring suit in federal court, which he then did. The defendant asserted the defense of laches and moved to dismiss or for summary judgment. The defendant submitted

affidavits indicating that several employees had either retired or left its employ. The affidavits indicated also that the location of records maintained by past employees was unknown and that dormant applications from 1974 had been destroyed as part of its regular retention-destruction schedule. The district court granted the defendant's motion for summary judgment, holding that Jeffries' claim was barred by laches, finding the defendant had established as a matter of law that Jeffries had inexcusably delayed in filing his Title VII complaint and the defendant had been unduly prejudiced by the delay.

Upon appeal, the Seventh Circuit first noted that laches is generally a factual question not subject to summary judgment, but then found summary judgment proper in the case because no genuine factual issues were in dispute.

The material facts in this case are as follows:

●Plaintiff resigned in mid-August 1978. He alleges he was coerced into resigning and his resignation was in reality a constructive discharge based on race.

●Plaintiff filed a Complaint with the EEOC based upon wrongful dismissal/discrimination due to race in September 1978.

●An EEO Counselor took Plaintiff's and others' statements in or about November 1978.

●In or about February 1979, Plaintiff received a report of the investigation and "picked out parts that [he] felt were mistated [sic] by [his] co-workers and supervisors and or having been coached employees as the stories were too identical" and mailed his objections and questions to the Philadelphia branch of the EEOC, as instructed.

●Later in 1979, Plaintiff was informed by the EEOC counselor that she was going on maternity leave and would take the case home with her. He would hear from her when she made a decision upon her

return to work.

● As of the date of filing the Complaint in this case, some 33 years later, Plaintiff had not "heard back from" the EEOC regarding the 1978 complaint.

● Plaintiff contacted the EEOC in 1990, pending the possibility of "re-opening the case."

● Plaintiff was diagnosed with PTSD by the VA in 1999, and was awarded 100% service-connected disability for PTSD. He contacted the EEOC in January 1999, stating that he wanted to file a claim for PTSD that he suffered due to his coerced resignation in 1978.

● Plaintiff "did[] not hear from them. . . so [he] let it go."

Plaintiff by his own admission did nothing to prod the EEOC to resolve his case. He did not even inquire about his case until at least 1990, some 12 years after the occurrence. By his own words, he was inquiring at that time as to "the possibility of re-opening the case," clearly indicating he was aware the case was closed, or at the very least, inactive (DE 22-1 attachment at paragraph 6.) He "received no satisfaction" from EEOC at that time. (DE 22-1 at paragraph 6). He contacted the EEOC again in 1999 to file a complaint for PTSD, also due to his 1978 forced resignation, but when he did not hear from them, he "let it go." Plaintiff filed a complaint in this Court in 2005, which he expressly stated was not for the 1978 racial discrimination claim. He also expressly stated he was not making a racial discrimination claim.

The undersigned finds there are no factual issues requiring resolution at trial. Fed. Rule Civ. P. 56(c) also requires, however, in order to be granted summary judgment, that Defendant be entitled to judgment as a matter of law. In this case, Defendant has the burden of proving both inexcusable delay and resulting prejudice. EEOC v. Great Atlantic & Pacific Tea Co., 735 F.2d 69 (3rd Cir.) cert. dismissed, 469 U.S. 925, 105 S.Ct. 307, 83 L.Ed.2d 241(1984).

**a. Inexcusable Delay**

The delay must be both unreasonable and inexcusable. <u>Jeffries</u>, <u>supra</u> at 679. In <u>Jeffries</u>, the court first stated that "[t]he ten-year delay was manifestly unreasonable," citing <u>Liberty Loan Corp.</u>, 584 F.2d 853 (8th Cir. 1978)(delay gave rise to inference of unreasonableness); <u>Cannon v. University of Health Sciences</u>, 710 F.2d 351 (7th Cir. 1983)(relying on EEOC cases, court finds that private litigant's delay of between 3 years/8 months and 5 years is unreasonable). In <u>Henderson</u>, the district of Maryland court found a period of over 20 years following an act of discrimination was "obviously" an unreasonable period of delay. <u>Henderson</u>, <u>supra</u>, at 482. Significantly, Plaintiff's delay in the case before this court was not three, five, ten, or even twenty years, but was over thirty-three years.

The <u>Jeffries</u> court next found the delay was inexcusable, noting that Jeffries "did nothing for at least nine years. He did not call or write to the EEOC." <u>See</u> <u>Coalition of Canyon Preservation v. Bowers</u>, 632 F.2d 774 (9th Cir. 1980)(one element of delay is attempt by party to contact agency.). Here, Plaintiff admittedly did not contact the EEOC for 12 years. He then contacted them to inquire about "re-opening" the case. He inquired in 1999, about his PTSD claim, but once again "dropped it" when he didn't hear back from them. Another five or so years later, he filed a "new" complaint based on PTSD, expressly <u>not</u> based on racial discrimination.

Jeffries' major justification for his delay was ignorance of the statute and regulations giving him the option to request a right-to-sue letter. Plaintiff here states that the counselor never contacted him again, and his case should still be pending because it was left unresolved. As the Court stated in <u>Jeffries</u>, Plaintiff "should have known of his power to prod the agency through the language of the statute." <u>Jeffries</u>, <u>supra</u>, at 680 (citing 42 U.S.C. section 2000e-5(f)(1); <u>Lynn v. Western Gillette, Inc.</u> 564 F.2d 1282 (9th Cir. 1977)). The statute is somewhat unclear, but a lay person would know at least

that the EEOC could do something in 180 days.  See Mohasco Corp. v. Silver, 447 U.S. 807, 100

S.Ct.2486, 65 L.Ed.2d 532 (1980)(lay person could understand somewhat ambiguous Title VII filing

requirements).  Regardless of any ambiguity, he should at least have contacted the agency to inquire

about his case.  See Gifford v. Atchison, Topeka and Santa Fe Ry. Co., 685 F.2d 1149 (9th Cir.

1982)(plaintiff repeatedly sought input to the EEOC action and the agency assured her it would file

suit on her behalf).

      The Fourth Circuit has found that "a charging party is entitled to such notice if the appropriate

conditions exist.  The Commission's failure actually to issue the notice cannot defeat the

complainant's statutory right to sue in the district court, for '(a) Title VII complainant is not charged

with the commission's failure to perform its statutory duties.'"  Russell v. American Tobacco Co.,

528 F.2d 357 (4th Cir. 1975) cert. denied, 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1976).  "In

our view, it is entitlement to a "right to sue" notice, rather than its actual issuance or receipt, which

is a prerequisite to the jurisdiction of the federal courts under section 2000e-f5(f)(1)."  In Perdue v.

Roy Stone Transfer Corp., 690 F.2d 1091, 29 Fair Empl. Prac.Cas.  1673, 30 Empl. Prac. Dec. P

33,094 (4th Cir. 1982), the Fourth Circuit stated:

> [I]t will be necessary for the district court to determine when plaintiff became so
> entitled for purposes of measuring the ninety-day period during which suit could
> properly be brought under the statute.  The Fifth Circuit confronted a very similar
> issue in *Crawford v. Western Elec. Co.*, 614 F.2d 1300 (5th Cir. 1980), in deciding
> what manner of notice suffices to commence the running of the statutory limitations
> period.  The court held:
>
> > [I]f the plaintiff is notified (1) that conciliation efforts on his or her
> > behalf have failed and (2) that the EEOC intends not to sue, the
> > respondent plaintiff has then received notice that the administrative
> > process is at an end.  The 90-day period beings to run at that point.

Id. at 1307.  We think that the analysis employed in Crawford is equally applicable

here.  Plaintiff's suit is timely if she sued within ninety days of acquiring knowledge

or reason to know that the Company refused to abide by the settlement agreement and that EEOC would take no further action on her behalf.

Although this case does not involve a settlement agreement, the undersigned finds the Fourth Circuit's analysis in Perdue is equally applicable here. There came a point at which Plaintiff acquired knowledge or reason to know that EEOC was not taking further action on his behalf. Giving Plaintiff every benefit of the doubt that point came, at the very latest, in 1990, when Plaintiff contacted the EEOC about the possibility of "re-opening the case," [DE 22-1 attachment at paragraph 6], clearly indicating he was aware it was closed, and then "received no satisfaction." Plaintiff again acquired knowledge or reason to know that EEOC was not taking further action on his behalf in 1999 when he contacted it regarding filing a claim for PTSD he suffered "due to his coerced resignation in 1978" and "let it go" when he did not hear back from them.

Plaintiff by his own admission did nothing to prod the EEOC to resolve his case. He did not even inquire about his case until at least 1990, some 12 years after the occurrence. "Relying on the administrative process cannot excuse a delay of this length. See Cannon, 710 F.2d at 360." Jeffries, supra, at 680). Significantly, Cannon involved a delay of only 5 years and Jeffries involved a delay of 10 years. The delay in the case at bar is 33 years. Also significantly, in Jeffries, the EEOC actually did act on the complaint (albeit after 8 years), and informed the defendant that reasonable cause existed for the plaintiff's discrimination claim. After negotiations failed, the EEOC actually issued a right-to-sue letter, authorizing Jeffries to bring a federal civil action. Notwithstanding the eventual action of the EEOC and the Plaintiff's receipt of a right-to-sue letter in that case, the Seventh Circuit affirmed the district court's dismissal of the case for inexcusable delay. Here, from Plaintiff's own statements, the undersigned finds that the EEOC was clearly not acting on the 1978 racial discrimination claim and that Plaintiff was aware they were not acting on it, as evidenced by his

contacting them in 1990 to see about "re-opening" the case, and then later "dropp[ing] it."

Based on all of the above, and especially in light of the extraordinary delay of over 33 years, the undersigned finds that delay was both unreasonable and inexcusable.

## b. Material Prejudice

Defendants must also prove they were materially prejudiced by Plaintiff's delay. "To establish material prejudice in a private discrimination suit, we require only that defendant show 'some prejudicial change in the condition or regulations of the . . . parties.'" Cannon, 710 F.2d at 362, quoting Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed.743 (1946), The longer the delay, the less prejudice defendant must establish. Gifford, supra, 685 F.2d at 1158 (concurrence). As already discussed, the delay in this case was 33 years. In proving prejudice, the defendant "may either rest on the inference alone or introduce additional evidence." White, supra, 909 F.2d at 102. In Henderson, the district of Maryland court held that the question of prejudice was "also resolved readily in favor of the defendants," stating:

> Not only are many witnesses virtually impossible to locate after 20 years, but their memories are obviously affected by the passage of time, especially in a case such as this, where there was not a starting episode that engraved itself on the minds of witnesses, as would be the case had they seen a grisly murder 20 years ago. Other reported cases have recognized that, in such circumstances, the Court may hold as a matter of law that the action is barred by laches . . . .

In Plaintiff's Reply to the Defendants' Response, he baldly asserts that "[t]he BOP continues to have the means to contact his past employers, and summon the necessary paperwork from the food manager regarding the 1978 discrimination case." Defendants, however, do not ask the Court only to infer prejudice due to the extraordinary delay, but attached Declarations to their motion evidencing such prejudice. Government Exhibit 4 is the Declaration of William H.S. Pratt, the Food Service

Administrator at FCI Morgantown[5] since February 2011. He previously worked at FCI Morgantown as a Cook Supervisor from 1992 to 2002. He declares under oath that none of the staff he has been overseeing worked at the institution in or prior to 1978. Further, the Food Service employee with the most tenure began working there in 1990. Pratt also declares under oath that he does not know anyone presently working at the institution who worked there prior to or in or about 1978, and did not even recall anyone during his prior service at FCI Morgantown (1992-2002) who had worked there in Food Service in or about 1978.

Government Exhibit 5 is the sworn Declaration of Jamie Johnson, another employee of the Federal Bureau of Prisons who has been serving as the Human Resources manager at FCI Morgantown for approximately the last five years. She has been employed in the Human Resources Department at FCI Morgantown since 1990. Ms. Johnson states that all employees at FCI Morgantown are federal law enforcement, subject to mandatory retirement at age 57. There are currently 175 employees. There are no employees working at FCI Morgantown who worked there in or before 1978. Further, the Human Resources Department at FCI Morgantown is not in possession of any personnel records dating back to 1978.

Plaintiff himself attached the sworn Declaration of Marcia Renaux, BOP Senior EEOC Specialist, which was evidence in the 2005 case in this Court. Ms. Renaux represented at that time that although the original correspondence file for Plaintiff's 2004 EEO complaint was located, the Bureau "neither ha[d] in its possession, nor ha[d] record of, any other such files." A search of the Bureau's LawPack database, on which the Bureau's records of EEO complaints filed with the Agency

---

[5]FCI Morgantown was known as the Kennedy Youth Center at the time Plaintiff worked there.

are kept, reflected that there was no record of any EEO complaint filed by Plaintiff in 1999. The LawPack did contain three log entries which indicated Plaintiff filed an EEO complaint with the Bureau on September 25, 1978; the Bureau accepted the complaint for investigation on November 14, 1978; and the Bureau received an investigator's report on February 6. 1979. Ms. Renaux continues: "The LawPack database does not reveal any additional information with regard to this complaint. Additionally, the Bureau cannot locate within the files kept by the Office of Discrimination Complaints and Ethics any original correspondence files with regard to a 1978 complaint."

Upon consideration of all of the above, the undersigned finds Defendant was materially prejudiced by Plaintiff's 33-year delay in filing a Complaint regarding his 1978 racial discrimination claim.

Based upon all which, the undersigned finds Defendants were materially prejudiced by Plaintiff's unreasonable and inexcusable delay in bringing the present action. The undersigned therefore **RECOMMENDS** Defendant's Motion for Summary Judgment be **GRANTED**.

## D. Damages

Having determined that Defendants are entitled to Summary Judgment and that this case should be dismissed with prejudice, the undersigned does not address Defendants' argument regarding the availability of damages.

## IV. Recommended Decision

In accord with the reasons herein stated, the undersigned recommends that "Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgement" (Docket Entry 14) be **GRANTED**, and this case be dismissed with prejudice.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to Plaintiff *pro se* and counsel of record.

Respectfully submitted this _14_ day of November, 2012.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE